1  Dennis Canty (SBN 207978)
   Elaine Canty (SBN 38576)
2  CANTY LAW
   1990 N. California Blvd., Eighth Floor
3  Walnut Creek, CA 94596
   dennis@canty.law
4  elaine@canty.law

5
   Richard Johnston (SBN 124524)
6  Johnston Law Office
   131A Stony Circle, Suite 500
7  Santa Rosa, CA 95401-9507
   Richard.Johnston@Johnston-Law-Office.com
8
   Attorneys for Plaintiff
9

10              UNITED STATES DISTRICT COURT

11              NORTHERN DISTRICT OF CALIFORNIA

                     OAKLAND DIVISION
12

13  KIM SMITH individually, and on behalf of a class    Case No: 4:19-cv-3573
    of those similarly situated;
14                                                       **CLASS ACTION**
                      Plaintiff,
15                                                       ERISA VIOLATIONS
         vs.
16                                                       29 U.S.C. § 1132
    I.A.T.S.E. LOCAL 16 PENSION PLAN,
17
                      Defendant.
18

19

20                    **PRELIMINARY STATEMENT**

21       1.      Plaintiff brings this class action to address ERISA violations by the I.A.T.S.E. LOCAL

22  16 PENSION PLAN ("defendant," or "the Plan").  Plaintiff is a participant in the Plan, and the Plan

23  began paying her pension in 2010.  However, effective August 1, 2017, the Plan purported to add a

24  new definition of "Prohibited Employment" – post-retirement employment that triggers suspension of

25  pension benefits.  The Plan's new definition is substantially broader than its old definition and

26  provides for suspension of pension payments to Plan participants whose employment falls within the

27  new, broader, definition.  The Plan has now "made a determination" that plaintiff's 2018 employment

28  falls within its new definition and threatens to suspend plaintiff's pension payments.  Moreover, both

before and after the "determination," the Plan engaged in confusing and inconsistent communications with plaintiff in particular and plan participants and beneficiaries generally with respect to the 2017 amendment, its impact and its applicability.

## PARTIES

2.    Plaintiff Kim Smith is an individual over the age of 18 residing in California, and a Plan Participant within the meaning of 29 U.S.C. §1002(7).

3.    Defendant I.A.T.S.E. LOCAL 16 PENSION PLAN is an employee pension benefit plan within the meaning of 29 U.S.C. §1002(2)(A).  The Plan resides, may be found and is administered in Pleasanton, California.

## JURISDICTION AND VENUE

4.    This Court has jurisdiction over this matter pursuant to 29 U.S.C. § 1132(e)(1).

5.    Venue is proper in this district pursuant to 29 U.S.C. § 1132(e)(2), as the Plan resides, may be found and is administered in this district.

## OPERATIVE FACTS

6.    Beginning in or about 1988 and through her retirement in 2010, plaintiff was an Employee within the meaning of the Plan and accrued benefits under the Plan.  Prior to her retirement, plaintiff's entitlement to Plan retirement benefits became fully vested and she had accrued sufficient service credits to entitle her to retirement benefits.

7.    In 2010, plaintiff retired, and the Plan began making pension payments to her.

8.    At the time of plaintiff's retirement, the Plan provided for the suspension of pension payments should a participant return to "full-time Covered Employment." The Plan defined Covered Employment as employment for which an employer was obligated to make contributions to the Trust Fund (i.e., union work).  The Plan provided for suspension of pension benefits to participants if they engaged in Covered Employment for more than 480 hours per year.

9.    On or about July 7, 2017, the Plan issued a notice to participants regarding certain amendments to the Plan that would take effect August 1, 2017.  Among these was a new definition of "Prohibited Employment."

1

10.     Hereafter referred to as "the Amendment," the notice stated:

2

3

Effective August 1, 2017, a new definition of Prohibited Employment is added to the Plan.  The current prohibited employment provision provides for suspension of benefits if a participant is engaging in "covered work" for which an employer was obligated to make contributions to the Trust Fund.  The new definition has a broader meaning and will result in suspension for work in the industry regardless of whether it is covered work for which contributions are made.  The new provision reads as follows:

4

5

6

Prohibited Employment means employment after Retirement that meets the following conditions:

7

8

(A) It is in the Industry as defined by [section] 1.11.

9

(B) It is in a trade or craft in which the Participant was employed at any time in Covered Employment.

10

(C) It is in the geographic area covered by the Plan.

11

12

Prohibited Employment includes employment meeting the above conditions that is in a supervisory or self-employed capacity.

13

The determination as to whether or not a type of employment is prohibited shall be at the sole discretion of the Board of Trustees.

14

11.     In early 2018, plaintiff applied for a mortgage on her residence.  In connection with that

15

application, her lender demanded that the Plan verify her pension.  The Plan responded, and plaintiff

16

and her lender relied on the Plan's representations in, respectively, obtaining and advancing the loan,

17

which was secured by a deed of trust on plaintiff's residence.

18

12.     In early 2019, plaintiff received from the Plan a form affidavit, which demanded

19

information about work she performed in 2018.  Plaintiff was unsure what to make of the affidavit,

20

and telephoned the Plan office for more information.  She was informed of the Amendment, and told

21

that it applied to her.  The Plan informed her that the union had every right to change the Plan rules if

22

they wanted to.  The Plan instructed her to complete the affidavit and to submit it for evaluation.

23

13.     The Plan issued similar letters and affidavits to plaintiff's fellow retirees.  As it later

24

made clear in representations to plaintiff, the Plan did so because it intended to apply the Amendment

25

to all Plan beneficiaries, including plaintiff and all similarly situated beneficiaries, from and after their

26

retirement.

27

28

14.     In March 2019, plaintiff submitted the completed affidavit, providing the information requested about her 2018 work, which was not Covered Employment within the meaning of the Plan provisions that pre-dated the Amendment.

15.     The Plan issued an adverse benefit determination to plaintiff dated April 29, 2019, indicating "the employment history provided has been reviewed and it has been determined that the work performed during 2018 is considered Prohibited Employment as defined by the Plan," thereby making explicit reference to the 2017 Amendment.  The Plan demanded further documentation, including plaintiff's tax return, stating "it will be reviewed to determine if your employment exceeded the 480 allowable hours."

16.     On May 23, 2019, plaintiff's counsel sent a letter to the Plan, specifically referencing the 2017 Amendment and the Plan's application of it to plaintiff.  Plaintiff asserted that the Amendment was contrary to law as applied to plaintiff, in that it violated ERISA's "anti-cutback" provisions.  Plaintiff also requested that the Plan rescind its adverse determination that plaintiff's employment was "Prohibited."

17.     On June 18, 2019, plaintiff's counsel received a letter from Plan counsel.  Counsel for the Plan contended that the Amendment was lawful, and did not withdraw the Plan's application of the Amendment to plaintiff.  Counsel for the Plan did not rescind the Plan's adverse determination that plaintiff's employment was Prohibited.  Rather, counsel for the Plan stated that plaintiff's claim would now be subject to review to determine whether she had engaged in post-retirement "Covered Employment" under the Plan document in effect as of 2010.  Before that review would begin, however, plaintiff was required to submit more information, including her tax return, which is unnecessary to the determination.  Thus, based on communications received from and on behalf of the Plan, plaintiff cannot reliably ascertain whether her pension benefits are endangered due to the 2010 Plan document, the 2017 Amendment, and the Plan's April 29, 2019 adverse determination.

18.     Plaintiff is now faced with uncertainty as to whether the Plan will suspend her pension benefits based on her past employment, and consequently is unable to reliably ascertain where she stands with respect to the Plan and her pension.  She is also faced with uncertainty as to whether and

how she can accept future employment in her chosen field and, at the same time, collect the pension to which she is entitled through the pre-Amendment Plan.

19.     Many other retirees similarly situated to plaintiff have received the same letter and affidavit, demanding information.  The Plan has similarly attempted to enforce the terms of the Amendment on other retirees not lawfully subject to it.  Some have received similar adverse benefit determinations from the Plan.  Some may have suffered suspension of benefits as a result.  All such retirees suffer from the same uncertainties as plaintiff.

20.     Nothing in the language of the Plan, before or after amendment, mandates that plaintiff or any of her fellow retirees must worry about making their mortgage payment or miss future employment opportunities while the Plan unlawfully holds the Amendment over their heads.  Nothing in the language of the Plan, before or after Amendment, mandates that they be subjected to further delay by pursuing any appeal or exhausting any administrative remedy prior to seeking relief from this Court.

## CLASS ACTION ALLEGATIONS

21.     The causes of action stated herein are brought and may properly be maintained as a class action pursuant to the provisions of Federal Rule of Civil Procedure 23.  Plaintiff brings this class action on behalf of herself and all other persons similarly situated, to seek redress on behalf of all those persons who have been affected by defendant's wrongful conduct.

22.     Plaintiff is unable to state the precise number of potential members of the proposed class because that information is in the possession of the Plan, but it is so numerous that joinder of all members would be impracticable.  The exact size of the proposed class, and the identity of the members thereof, will be readily ascertainable from the records of the Plan.

23.     The Class Members on whose behalf this Complaint is brought is composed of all plan participants:

a.    who had accrued benefits under the plan and retired prior to August 2017;

b.    to whom the Plan sent notices, letters or affidavits concerning Prohibited Employment or determined to have engaged in Prohibited Employment pursuant to the Amendment; and

c.  who were not engaged in Covered Employment pursuant to the pre-Amendment
definition.

24.  There is a community of interest among the members of the proposed class in that there are questions of law and fact common to the proposed class that predominate over questions affecting only individual members.  Proof of a common set of facts will establish the liability of the Plan, and the right of each Class Member to recover.

25.  The common questions which predominate include, *inter alia:*

a.  Whether the Amendment expands the definition of employment for which pension benefits may be suspended by Plan;

b.  Whether that expansion triggers suspension of benefits already accrued by the Class Members;

c.  Whether such expansion and suspension are unlawful pursuant to 29 U.S.C. § 1054(g);

d.  Whether the application of the Plan (as amended) to Plaintiff and the Class Members violates the terms of the Plan;

e.  Whether an injunction is warranted, prohibiting the application of the Amendment to Plaintiff and the Class Members, and providing corrective notice;

f.  What the terms of any injunction should be; and

g.  Whether payment of suspended benefits to any of the Class Members is warranted.

26.  Plaintiff's claims are typical of those of the class which she represents, and she will fairly and adequately represent the interests of the class.  Plaintiff has no irreconcilable conflicts with the prosecution of this class action.  Plaintiff is represented by counsel competent and experienced in litigation of complex, class action, ERISA and collective bargaining matters.

27.  A class action is superior to other methods for the fair and efficient adjudication of this controversy.  Individual joinder of all Class Members is impracticable, and no other group method of adjudication of all claims asserted herein is more efficient and manageable while at the same time

CLASS ACTION COMPLAINT; ERISA VIOLATIONS

providing all the remedies available to ensure the full purpose of ERISA is effectuated.  Because the damages suffered by the individual Class Members may be relatively small compared to the expense and burden of litigation, it would be impracticable and economically unfeasible for Class Members to seek redress individually.

28.    The typical damages amount of an individual Class Member may be relatively small. The prosecution of separate actions by the individual Class Members, even if possible, would create a risk of inconsistent or varying adjudications with respect to individual Class Members against the Plan, and would establish incompatible standards of conduct.  The conduct of this action as a class action presents fewer management difficulties, conserves the resources of the parties and the court system, and protects the rights of each Class Member as compared to other methods for the group wide adjudication of this controversy.

29.    Notice of the pendency or any resolution of this action can be provided to the Class Members by individual mailed notice based on contact information contained in the Plan's files, and/or by publication, and such costs are properly imposed on the defendant.

## **VIOLATIONS OF ERISA**

30.    Plaintiffs incorporate by reference and reallege each paragraph set forth above.

31.    29 U.S.C. § 1132(a)(3) provides that a civil action may be brought by a plan participant to enjoin any act or practice which violates ERISA, to obtain other appropriate equitable relief to redress such violations or to enforce the terms of the Plan.

32.    29 U.S.C. § 1132(a)(1)(B) provides that a civil action may be brought by a plan participant to recover benefits due under the Plan, to enforce his or her rights under the terms of the Plan, or to clarify his or her rights to future benefits under the terms of the Plan.

33.    29 U.S.C. § 1054(g) prohibits a decrease in accrued benefits of a participant by amendment of the plan.

34.    Specifically, 29 U.S.C. § 1054(g) "prohibits an amendment expanding the categories of postretirement employment that trigger suspension of payment of early retirement benefits already accrued."  *Central Laborers' Pension Fund v. Heinz*, 541 U.S. 739, 741 (2004).

35.     The Plan has violated and continues to violate 29 U.S.C. § 1054(g), in that it has suspended or intends to suspend payment of benefits already accrued to Plaintiff and the Class Members through the Amendment, which expands categories of prohibited postretirement employment.  Alternatively, the Plan has violated and continues to violate the terms of the Plan as amended, applying it to Plaintiff and the Class Members whose pension benefits had already accrued.

36.     The Plan will continue to violate the law and the terms of the Plan unless and until enjoined by this Court.

37.     The Plan and its counsel have now issued to plaintiff incomprehensible and inconsistent communications, such that plaintiff is unable to reliably ascertain where she stands with respect to the Plan, the ongoing viability of her pension benefit, or the implications should she accept post-retirement employment.  The Plan's intentions with respect to other Class Members remain inscrutable as well.

38.     Pursuant to 29 U.S.C. § 1132(g), plaintiff is entitled to reasonable attorney's fees and costs.

WHEREFORE, Plaintiffs pray for relief as set forth below.

## PRAYER FOR RELIEF

1.     For an order certifying the case as a class action;

2.     For declaratory relief, clarifying the past and future rights of plaintiff and the Class Members under the Plan, with notice to the Class Members;

3.     For an order permanently enjoining the Plan from implementing the August 2017 Amendment against plaintiff and the Class Members;

4.     For an order that all pension benefits unlawfully suspended be paid;

5.     For pre- and post-judgment interest to the extent permitted by law;

6.     For an award of attorneys' fees, costs, and expenses;

7.     For such other and further relief as the Court may deem just and proper.

Dated: June 19, 2019                    **CANTY LAW**

                                         */s/ Dennis Canty*
                                         Dennis Canty
                                         Elaine Canty