UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIM SMITH,<br><br>        Plaintiff,<br><br>    v.<br><br>I.A.T.S.E. LOCAL 16 PENSION PLAN,<br><br>        Defendant. | Case No. 19-cv-03573-DMR<br><br>**ORDER ON DEFENDANT'S MOTION TO DISMISS**<br><br>Re: Dkt. No. 7 |

On June 19, 2019, Plaintiff Kim Smith filed a complaint on behalf of a putative class against Defendant I.A.T.S.E. Local 16 Pension Plan (the "Plan"), alleging various violations of the Employment Retirement Income Security Act ("ERISA"). [Docket No. 1 ("Compl.").] The Plan now moves to dismiss the complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). [Docket Nos. 7 ("Mot."), 14 ("Reply").]. Smith timely opposed. [Docket No. 13 ("Opp.").] The court held a hearing on October 24, 2019.

Having considered the parties' briefs and oral arguments, the court grants in part and denies in part the Plan's motion.

**I.    BACKGROUND**

The following facts are taken from Smith's complaint. The Plan is an employee pension benefit plan covered by ERISA and Smith has been a participant in the Plan since 1988. Compl. ¶¶ 1-3, 6. After Smith's entitlement to pension benefits vested, she retired in 2010 and the Plan began paying her pension benefits. *Id.* ¶¶ 1, 6-7. At the time Smith retired, the Plan provided that post-retirement benefits would be suspended if participants returned to "full-time Covered Employment." *Id.* ¶ 8. The Plan defined "Covered Employment" as "employment for which an employer was obligated to make contributions to the Trust Fund (i.e., union work)." *Id.* ¶ 8. Under the terms of the Plan in 2010, a participant's pension benefits would be suspended if they engaged in Covered

Employment for more than 480 hours per year. *Id.*

In July 2017, participants in the Plan received notice of amendments that would take effect on August 1, 2017 (the "Amendment"). Compl. ¶ 9; *see* Docket No. 13-1 ("Canty Decl."), Ex. 3 ("Notice"). At issue in this case is the Plan's new definition of "Prohibited Employment," which (according to the Notice) "has a broader meaning [than the prior definition] and will result in suspension for work in the industry regardless of whether it is covered work for which contributions are made." Notice at 2. The Amendment provides:

> Prohibited Employment means employment after Retirement that meets the following conditions:
>
> (A) It is in the Industry as defined by [section] 1.11.
> (B) It is in a trade or craft in which the Participant was employed at any time in Covered Employment.
> (C) It is in the geographic area covered by the Plan.
>
> Prohibited Employment includes employment meeting the above conditions that is in a supervisory or self-employed capacity.
>
> The determination as to whether or not a type of employment is prohibited shall be at the sole discretion of the Board of Trustees.

Compl. ¶ 10; Canty Decl., Ex. 1 ("2017 Plan") ¶ 1.19.

Smith alleges that in early 2019, the Plan sent her a form affidavit that required her to report information about the post-retirement work she performed in 2018. Compl. ¶ 12. Smith called the Plan office for information about the affidavit. *Id.* She was informed by an unidentified person that the Plan had been amended and that the Amendment applied to her. *Id.* According to Smith, the Plan informed her that "the union had every right to change the Plan rules if they wanted to," and instructed her to complete the affidavit and submit it for evaluation. *Id.* Smith claims that other retired participants of the plan were issued similar letters and affidavits. *Id.* ¶ 13. She avers that the Plan intended to apply the Amendment to all plan beneficiaries, including participants like Smith who retired prior to August 2017. *Id.*

Smith completed and submitted the affidavit in March 2019. Compl. ¶ 14. She provided the requested information about the work she performed in 2018, which she claims was not Covered Employment as defined by the Plan prior to the Amendment. *Id.* On April 2019, the Plan sent her

2

a letter informing her that her 2018 work was "considered Prohibited Employment as defined by the Plan." *Id.* ¶ 15; *see* Canty Decl., Ex. 4 ("Benefit Letter"). The Plan directed her to submit her 2018 paystubs, W-2s, and tax return to determine whether she exceeded the 480 allowable hours. *Id.* ¶ 15; Benefit Letter.

On May 23, 2019, Smith's counsel sent a letter to the Plan, asserting that the Amendment as applied to her violated ERISA's "anti-cutback" provisions. Compl. ¶ 16. She accordingly requested that the Plan rescind its adverse determination that her 2018 employment was "Prohibited Employment" as defined by the Plan. *Id.* On June 18, 2019, counsel for the Plan responded. *Id.* ¶ 17; *see* Canty Decl., Ex. 5 ("Plan Letter"). The Plan stated that the provisions of the Plan as amended to January 1, 2010 applied to Smith, and that the provisions of the 2010 Plan "govern the determination as to whether Ms. Smith's benefit payment will cease due to employment." Plan Letter at 2. The Plan also reiterated the request in the Benefit Letter that Smith provide her financial information so that it could complete a determination on Smith's benefits. *Id.*

Smith alleges that, based on the "incomprehensible and inconsistent" communications from the Plan, she "cannot reliably ascertain whether her pension benefits are endangered due to the 2010 Plan document, the 2017 Amendment, and the Plan's April 29, 2019 adverse determination." Compl. ¶¶ 17, 37. She states that she is "now faced with uncertainty as to whether the Plan will suspend her pension benefits based on her past employment, and consequently is unable to reliably ascertain as to where she stands with respect to the Plan and her pension." *Id.* ¶ 18.

According to Smith, the Plan violates 29 U.S.C. § 1054(g), which provides that "[t]he accrued benefit of a participant under a plan may not be decreased by an amendment of the plan" (the "anti-cutback" rule). *Id.* ¶ 33. She seeks relief under 29 U.S.C. § 1132(a)(1)(b) (ERISA § 502(a)(1)(B)) and 29 U.S.C. § 1132(a)(3) (ERISA § 502(a)(3)). Smith also alleges that the Plan has "attempted to enforce the terms of the Amendment on other retirees not lawfully subject to it," and she proposes to represent a class of all Plan participants who retired prior to August 2017 and have been subjected to the Amendment. *Id.* ¶¶ 19, 23.

On behalf of herself and the class, Smith seeks declaratory relief clarifying the past and future rights of pre-Amendment retirees under the Plan; an order enjoining the Plan from enforcing

3

the Amendment against her and the putative class; an order that the Plan pay all benefits that have been unlawfully suspended by reason of the alleged ERISA violations; pre- and post-judgment interest; and attorneys' fees and costs.

## II.     LEGAL STANDARD FOR RULE 12(B)(6) MOTIONS

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted), and may dismiss a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)) (quotation marks omitted). A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Lee v. City of L.A.*, 250 F.3d 668, 679 (9th Cir. 2001), overruled on other grounds by *Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

As a general rule, a court may not consider "any material beyond the pleadings" when ruling on a Rule 12(b)(6) motion. *Lee*, 250 F.3d at 688 (citation and quotation marks omitted). However, "a court may take judicial notice of 'matters of public record,'" *id*. at 689 (citing *Mack v. S. Bay Beer Distrib*., 798 F.2d 1279, 1282 (9th Cir. 1986)), and may also consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading," without converting a motion to dismiss under Rule 12(b)(6) into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith*, 307 F.3d at 1125-26. The court need not accept as true allegations that contradict facts which may be judicially noticed. *See Mullis v. U.S. Bankr. Court*, 828 F.2d

1385, 1388 (9th Cir. 1987).

## III. DISCUSSION

The Plan moves to dismiss Smith's complaint on five grounds: (1) that Smith did not exhaust her administrative remedies prior to commencing this action; (2) that Smith has not alleged facts sufficient to state a claim under section 502(a)(1)(B); (3) that Smith has not adequately pleaded a violation of ERISA's anti-cutback rule; (4) that Smith is not entitled to equitable relief under section 502(a)(3); and (5) that Smith has not pleaded that she is entitled to injunctive relief.

### A. Exhaustion of Administrative Remedies

The Plan argues that Smith failed to exhaust her administrative remedies under the Plan as required before seeking judicial relief. Mot. at 10. The ERISA statute does not explicitly contain an exhaustion requirement. *Amato v. Bernard*, 618 F.2d 559, 566 (9th Cir. 1980). However, the Ninth Circuit has held that "federal courts have the authority to enforce the exhaustion requirement in suits under ERISA, and that as a matter of sound policy they should usually do so." *Id.* at 568. There are some exceptions to this general rule. If a plaintiff is not seeking to enforce her rights under a plan but rather claims that the plan itself violates a statutory provision of ERISA, exhaustion is not required. *Fujikawa v. Gushiken*, 823 F.2d 1341, 1345 (9th Cir. 1987) ("Exhaustion of internal dispute procedures is not required where the issue is whether a violation of the terms or provisions of the statute has occurred."); *Goodin v. Innovative Tech. Sols., Inc.*, 489 F. Supp. 2d 1157, 1163 (D. Haw. 2007) (holding that exhaustion was not required where the plaintiffs made "a claim for rights arising under ERISA, not a claim for benefits arising under the Plan"); *Barnes v. AT&T Pension Ben. Plan*, No. 08-cv-04058-MHP, 2010 WL 1340543, at *5 (N.D. Cal. Apr. 5, 2010) ("Claims brought under section 1054 to address any amendments to an ERISA-covered plan that has the effect of reducing accrued benefits present precisely the type of statutory claim that does not require exhaustion.").

In this case, Smith is bringing claims under both ERISA § 502(a)(3) and ERISA § 502 (a)(1)(B). Section 502(a)(3) allows a Plan participant, beneficiary, or fiduciary to obtain equitable relief based on a violation of any provision of ERISA or the terms of a plan. The underlying basis for Smith's section 502(a)(3) claim is the anti-cutback rule of section 1054(g). A claim brought

5

under section 1054(g) is an explicit statutory claim that does not require exhaustion. *Barnes*, 2010 WL 1340543, at *5; *see also Traylor v. Avnet, Inc.*, 2009 WL 383594, at *5 (D. Ariz. Feb. 13, 2009) ("Generally, an anti-cutback claim seeks to enforce specific statutory requirements under ERISA and thus does not require exhaustion.") At the hearing, the Plan conceded that Smith was not required to exhaust her administrative remedies for her section 502(a)(3) claim.

In contrast, section 502(a)(1)(B) permits a plan participant or beneficiary to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." Smith's claim under section 502(a)(1)(B) is not addressed to an alleged violation of an ERISA statutory provision but instead seeks to clarify her rights under the terms of the Plan.[1] For claims brought under a plan, the Ninth Circuit has adopted the rule that "a claimant need not exhaust when the plan does not require it." *Spinedex Physical Therapy USA Inc. v. United Healthcare of Arizona, Inc.*, 770 F.3d 1282, 1299 (9th Cir. 2014). In this case, the Summary Plan Description ("SPD") provides that "if you have a claim for benefits that is denied or ignored, in whole or in part, you may file suit in a state or federal court if you complied with the Plan's required administrative appeal procedures." Mot. at 10; *see also* Docket No. 8 ("Davis Decl."), Ex. 1, at 13. While this language appears to mandate exhaustion of administrative remedies, the Plan itself states that "[i]f you are not satisfied, or do not agree with, the reasons for the denial of our claim, you may appeal the decision to the Board of Trustees." 2017 Plan ¶ 10.4(b). As Smith points out, the express language of the Plan contains permissive language that seemingly contradicts the mandatory language of the SPD. In *CIGNA Corp. v. Amara*, 563 U.S. 421 (2011), the Supreme Court rejected the argument that summary plan descriptions must necessarily "be enforced . . . as the terms of the plan itself." 563 U.S. at 437. A subsequent published decision in this district has interpreted *Amara* to mean that if there are contradictions between the SPD and the terms of the Plan itself, then the Plan controls. *See Langlois v. Metro. Life Ins. Co.*, 833 F. Supp. 2d 1182, 1186 (N.D. Cal. 2011); *see also Bergt v. Ret. Plan for Pilots Employed by MarkAir, Inc.*, 293 F.3d 1139, 1145 (9th Cir. 2002) ("[T]he law should provide as strong an

---

[1] As discussed below, Smith's complaint is ambiguous as to whether she is seeking enforcement or clarification of the Plan terms and must be amended to clarify that point.

6

incentive as possible for employers to write the SPDs so that they are consistent with the ERISA plan master documents, a relatively simple task."); *Barnes v. Indep. Auto. Dealers Ass'n of California Health & Welfare Benefit Plan*, 64 F.3d 1389, 1393 (9th Cir. 1995) ("We must construe ambiguities in an ERISA plan against the drafter and in favor of the insured."). Since there is an apparent contradiction between the SPD and the Plan, the terms of the Plan control. At the hearing, the Plan did not contest that the express language of the Plan is permissive rather than mandatory with respect to the issue of exhaustion. Accordingly, Smith is not required to exhaust administrative remedies for her claim under section 502(a)(1)(B).

### B. Section 502(a)(1)(B) Claim

Section 502(a)(1)(B) permits a participant or beneficiary to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). The Plan argues that Smith has not adequately pleaded a claim under section 502(a)(1)(B) because her claim "does not, and cannot arise under the terms of the Plan because there has been no decision or interpretation of the Plan by the Plan Administrator with respect to Plaintiff's post-retirement employment, in a way that denies her benefits due." Mot. at 9.

The Plan's argument assumes that Smith is seeking to enforce the terms of the Plan. The complaint is admittedly ambiguous as to which prong of section 502(a)(1)(B) applies to this action. At the hearing, Smith clarified that she is not seeking to recover benefits due or enforce any terms within the Plan itself but is rather seeking clarification as to whether the 2017 Amendment applies to her. She has pleaded that the Plan has taken actions that suggest that the Plan's administrator has, at least at some point, attempted to apply the Amendment to her. *See, e.g.*, Benefit Letter ("[I]t has been determined that [your] work performed during 2019 is considered Prohibited Employment as defined by the Plan."). Smith has also pleaded that nothing in the Plan explicitly states that the Amendment does not apply to pre-2017 retirees, which the Plan conceded at the hearing.

These allegations are sufficient to support Smith's claim that the terms of the Plan are ambiguous and that she is entitled to clarification as to her rights under the Plan. However, Smith must amend her complaint to state that she is seeking clarification of the Plan terms rather than

7

enforcement or payment of benefits due.

### C. Section 502(a)(3) Claim

Section 502(a)(3) permits a participant to bring a civil action "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3). The Plan moves to dismiss Smith's claim under section 502(a)(3) on the basis that she has not adequately pleaded an underlying violation of ERISA and because she is not entitled to "other appropriate relief" under this section.

#### 1. Anti-Cutback Rule

The Plan argues that Smith's complaint does not state a claim for relief based on a violation of ERISA's anti-cutback rule. The anti-cutback rule is codified in section 1054(g), which provides that "[t]he accrued benefit of a participant under a plan may not be decreased by an amendment of the plan," other than through two exceptions that are not at issue here. *See* 29 U.S.C. § 1054(g)(1). In *Cent. Laborers' Pension Fund v. Heinz*, 541 U.S. 739 (2004), the Supreme Court held that the anti-cutback rule "prohibits an amendment expanding the categories of postretirement employment that trigger suspension of payment of early retirement benefits already accrued." 541 U.S. at 741. This is because "when Congress enacted ERISA it 'wanted to . . . mak[e] sure that if a worker has been promised a defined pension benefit upon retirement—and if he has fulfilled whatever conditions are required to obtain a vested benefit—he actually will receive it.'" *Lockheed Corp. v. Spink*, 517 U.S. 882, 887 (1996) (quoting *Nachman Corp. v. Pension Ben. Guar. Corp.*, 446 U.S. 359, 375 (1980)).

In this case, Smith alleges that the 2017 Plan contains "categories of postretirement employment that trigger suspension of payment of early retirement benefits already accrued"; namely, the categories listed in its "Prohibited Employment" provision. *See Heinz*, 541 U.S. at 741. She also alleges that these categories are broader than the 2010 Plan's analogous provision relating to "Covered Employment." Smith argues that she and other retirees are subject to the 2017 Amendment by the "express terms of the Plan," because the Plan "creates no exceptions from the[] Prohibited Employment provisions for [anyone] who retired prior to August of 2017, nor does it

8

specify which of the Plan provisions apply to whom." Opp. at 4. According to Smith, applying the Amendment to her and other pre-2017 retirees violates the anti-cutback rule because it retroactively expands the conditions under which their benefits may be suspended.

The Plan argues that Smith "has not pled sufficient facts to allege that the Plan's 2017 Amendment applies to her or for that matter affects or decreased her accrued benefit in any way." Mot. at 6. It cites *Battoni v. IBEW Local Union No. 102 Employee Pension Plan*, 594 F.3d 230 (3d Cir. 2010) for the proposition that a plaintiff alleging a violation of ERISA's anti-cutback rule must show "(1) that a plan was amended and (2) that the amendment decreased an accrued benefit." 594 F.3d at 233. It is the second requirement that Smith cannot meet, the Plan argues, since she has not pleaded that any of her benefits were decreased. The court disagrees. The Plan's argument is contradicted by *Heinz*, which explains that "it is the addition of a suspension condition, not the actual suspension of a benefit, that reduces an employee's accrued benefit." 541 U.S. at 750 n. 6. Although Smith does not allege that any of her benefits have been suspended, she has pleaded that the Amendment added a suspension condition. The addition of the condition itself reduces her accrued benefit, provided that the condition applies to her.

While the Plan asserts that Smith "should know that the . . . 2017 Amendment does not apply to her," the 2017 Plan does not contain language that excludes pre-Amendment retirees from the additional conditions. *See* Mot. at 7. It is one of ERISA's "core functional requirements[] that '[e]very employee benefit plan shall be established and maintained *pursuant to a written instrument.*'" *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 83 (1995) (quoting 29 U.S.C. § 1102(a)(1)). A written plan is required so that "every employee may, *on examining the plan documents*, determine exactly what his rights and obligations are under the plan." *Id.* (citation omitted). Smith has adequately alleged that a pre-Amendment retiree reading the terms of the 2017 Plan could not "determine exactly what his rights and obligations are" because the Plan does not explain that the expanded categories of Prohibited Employment apply only to participants whose benefits have not yet accrued. The Plan has offered no cases that support its contention that Smith cannot challenge the 2017 Plan based on the administrator's determination that Smith herself is not subject to the Amendment. Nor does that proposition comport with the intent of ERISA that

9

employees may rely on their plan to describe their rights, as pre-2017 retirees must seek help beyond the language of the Plan to clarify that the Amendment does not apply to them.

Accordingly, Smith has adequately pleaded that the Amendment violates ERISA's anti-cutback rule and that the Amendment decreased her accrued benefits. The alleged violation of the anti-cutback rule serves as the underlying basis for Smith's claim under section 502(a)(3).

### 2. Equitable Remedies

The Plan argues that Smith's request for declaratory and injunctive relief under 502(a)(3) is barred because that relief is available under section 502(a)(1)(B) and therefore duplicative. The Ninth Circuit has previously held that "litigants may not seek equitable remedies under § 1132(a)(3) if § 1132(a)(1)(B) provides adequate relief." *Moyle v. Liberty Mut. Ret. Ben. Plan*, 823 F.3d 948, 962 (9th Cir. 2016) (citing cases). However, these cases preceded the Supreme Court's decision in *Amara*. The Ninth Circuit has interpreted *Amara* to "allow[] for alternative pleading under both provisions so long as there is no duplicative recovery." *Black v. Greater Bay Bancorp Exec. Supplemental Comp. Benefits Plan*, No. 16-cv-00486-EDL, 2016 WL 11187255, at *14 (N.D. Cal. July 25, 2016) (citing *Moyle*, 823 F.3d at 961). In this case, Smith contends that she is pleading for relief in the alternative under sections 502(a)(3) and 502(a)(1)(B). Mot. at 5. Alternative pleading for relief is permitted in the wake of *Amara*. *Moyle*, 823 F.3d at 961.

Smith also asserts that her section 502(a)(3) claim requests equitable relief through reformation of the Plan terms. *See Moyle*, 823 F.3d at 960 (explaining that the Supreme Court in *Amara* held that "plan reformation was available under § 1132(a)(3) as an equitable remedy" because "the power to reform contracts is a traditional power of an equity court"). In contrast, reformation is not an available remedy under 502(a)(1)(B). *See Amara*, 563 U.S. at 436 (stating that "we have found nothing suggesting that [section 502(a)(1)(B)] authorizes a court to alter [the] terms" of an ERISA-governed plan). Since section 502(a)(3) provides remedies that are not available under section 502(a)(1)(B), Smith may seek alternate remedies under both provisions so long as her recovery is not duplicative.

Nevertheless, Smith's complaint does not say anything about seeking reformation of the Plan as an equitable remedy. The Plan's motion is granted to the extent that Smith's complaint does not

adequately allege a claim for reformation under section 502(a)(3). Smith is granted leave to amend her complaint to add this claim since it is not clear that amendment would be futile.

### D. Injunctive Relief

Finally, the Plan argues that Smith has not adequately pleaded that she is entitled to injunctive relief prohibiting the application of the Amendment to her and the putative class. In order to satisfy the Article III requirements of the U.S. Constitution, "a plaintiff must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 185 (2000). A plaintiff seeking injunctive relief must show that she has "suffered an irreparable injury." *Sierra Forest Legacy v. Sherman*, 646 F.3d 1161, 1184 (9th Cir. 2011) (quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).

Here, the Plan asserts that Smith "does not and cannot plead facts to suggest that she has suffered any irreparable harm as a result" of her uncertainty about the application of the Amendment to her. Mot. at 13. At oral argument, Smith clarified that she is seeking injunctive relief in the form of plan reformation, and not on any other basis. That remedy is addressed as part of Smith's section 502(a)(3) claim, discussed above. For the reasons stated previously, Smith must amend her complaint to adequately plead her entitlement to reformation.

## IV. CONCLUSION

For the reasons stated above, the Plan's motion to dismiss is granted in part and denied in part. Smith must amend her complaint to address the deficiencies identified in this order. Her amended complaint is due no later than December 11, 2019.

**IT IS SO ORDERED.**

Dated: November 26, 2019



Donna M. Ryu
United States Magistrate Judge